UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RACHELLE RUSS,

        Plaintiff,

vs.                              Case No.  3:07-cv-1213-J-MCR

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying her application for Social Security benefits for the time period from April 29,

1997.  The Court has thoroughly reviewed the record, the briefs, and the applicable law.

For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the

matter **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits and

supplemental security income payments on November 10, 1999.  On May 20, 2002, the

Administrative Law Judge ("ALJ") issued a decision finding claimant was unable to

engage in substantial gainful activity due to obesity, a severe physical impairment.

However, the ALJ determined Plaintiff was not "disabled" as defined under the Social

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 5).

Security Regulations because within 12 months of onset, Plaintiff had failed, without justifiable reason, to follow the treatment prescribed. Plaintiff filed a request for review by the Appeals Council, which was denied. Therefore, the ALJ's decision became the final decision of the Commissioner of Social Security Administration. Thereafter, Plaintiff filed a civil action in this Court challenging the decision. On May 12, 2005, the district court remanded the case to the Commissioner with detailed instructions for further proceedings. The ALJ issued a second decision on April 13, 2006 in which he changed his initial findings. Despite Plaintiff's obesity and history of right knee meniscus tear with surgical repair, the ALJ determined Plaintiff was able to perform a significant range of sedentary work. The ALJ's second decision is the subject of this opinion.

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff alleges disability as of April 29, 1997 due to tiredness in her arms and severe pain in her back and stomach. (Tr. 128).

### B. Summary of Evidence Before the ALJ

Plaintiff was forty-three years of age at the time of the ALJ's second decision. (Tr. 436). Plaintiff completed high school and has past relevant work experience as a janitor, nurse's assistant, school crossing guard, and cook's helper. (Tr. 129).

In connection with the court remand of May 12, 2005, the ALJ reviewed treating records from Dr. Papa-Patanguan who treated Plaintiff continuously from March 2001 to October 2002. (Tr. 570 - 618). During that period, Plaintiff's weight fluctuated between

258 pounds and 276 pounds, with 258 pounds recorded as her weight on October 10, 2002. Id. Dr. Papa-Patanguan's notes indicate Plaintiff's health concerns included hypertension, diabetes, and depression. Id. Plaintiff was diagnosed with diabetes in May, 2002 and she was referred to Baptist Health for Diabetes Self Management Education. (Tr. 586). Dr. Papa-Patanguan's notes indicate an on-going concern for Plaintiff's education about diet and exercise.

On January 17, 2002, Dr. Papa-Patanguan completed a Medical Source Statement in which she opined Plaintiff was able to lift less than 10 lbs occasionally, frequently lift less than 10 lbs, stand and/or walk less than 2 hours in a 8 hour workday, and needed to alternate sitting and standing to relieve pains or discomfort. Dr. Papa-Patanguan also stated Plaintiff's ability to push and/or pull was limited in the upper extremities due to carpel tunnel, and in the lower extremities due to knee pain. (Tr. 376). In terms of postural limitations, Plaintiff was deemed unable to climb, kneel, crouch, or crawl, and was only occasionally able to balance and stoop. Id. Dr. Papa-Patanguan also opined Plaintiff's manipulative functions were limited to occasional reaching, handling, fingering, and feeling. (Tr. 377). Additionally, Dr. Papa-Patanguan completed OHA/ALJ Interrogatories in which she urged Plaintiff to lose weight by providing verbal instructions about diet and exercise. (Tr. 379). Dr. Papa-Patanguan also stated Plaintiff's hypertension and ovarian steroid cell tumor were physical impairments that could make losing weight difficult or impossible for Plaintiff. Id. Finally, Dr. Papa-Patanguan indicated Plaintiff would likely experience less back pain and improvement in her hypertension if she lost weight. Id.

Plaintiff has a history of right knee degenerative joint disease. (Tr. 630). On May 18, 2004, Plaintiff underwent surgical intervention due to lateral meniscus tears of the right knee. Id. Between January 2001 and June 2005, Plaintiff received treatment at Shands for various health concerns including, depression, knee pain, chronic back pain, abdominal pain, ovarian cancer, constipation, and bowel incontinence. (Tr. 506 - 569, 619 - 720).

Dr. Lazo, performed a consultative examination of Plaintiff on October 17, 2001. Dr. Lazo's impression diagnosis of Plaintiff was:

> 1) Status post uterosalpingo-oophorectomy and lymphnode disection for ovarian cancer, April 1997 with residual abdominopelvic pain aggravated proportionally with activity and effort. 2) Possibility of mild right shoulder tendinitis causing discomfort on lifting. 3) Mechanic low back pain. 4) Obesity-ideal body weight is 149lbs; current body weight is 268lbs. 5) Urinary stress incontinence. 6) Depression under inadequate control.

(Tr. 364). Further, Dr. Lazo completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) in which he opined Plaintiff was able: to lift and/or carry 10 lbs frequently, to stand and/or walk at least 2 hours in an 8 hour workday, and to sit about 6 hours in an 8 hour workday. (Tr. 367 - 368). Also, Dr. Lazo stated Plaintiff's ability to push and/or pull with her upper extremities and her ability to reach in all directions was limited. Id. In terms of postural limitations, Dr. Lazo opined Plaintiff was only able to climb, balance, kneel, crouch, crawl, and stoop occasionally. (Tr. 368).

Dr. Stephen Gyland, Office of Hearings and Appeals medical expert, did not examine Plaintiff. However, based on a review of Plaintiff's medical records, he testified at the remand hearing held August 1, 2005. Dr. Gyland disagreed with Dr. Papa-

Patanguan's assessment of Plaintiff's limitations. In Dr. Gyland's opinion, Dr. Papa-Patanguan's RFC was more restrictive than that of all the other doctors, yet it was only based on what the Plaintiff had told her and not on objective findings. (Tr. 734). Dr. Gyland agreed with the RFCs provided by the other doctors, including Dr. Lazo, which he stated were all "pretty well unlimited." (Tr. 735). Dr. Gyland stated Plaintiff's main condition was obesity, but she also had slight psychological problems with anxiety, depression, and dysthymia. (Tr. 726). He stated there was no evidence of impairment as a result of Plaintiff's cancer and while Plaintiff had complained of her back and knees, her x-rays, range of motion, and ambulation were normal. Id. Dr. Gyland opined Plaintiff's only limitations would be as a result of her obesity. (Tr. 727). Dr. Gyland stated he knew nothing of Plaintiff's knee surgery, and very little about Plaintiff's bladder incontinence. (Tr. 729 - 730). Further questioning revealed Dr. Gyland had not reviewed exhibit 16F, a significant portion of Plaintiff's records. Id. Additionally, Dr. Gyland stated the only evidence of Plaintiff's non-compliance with prescribed treatment was the fact that Plaintiff had not lost the weight. (Tr. 727). He opined that if Plaintiff had reduced her weight by 50-100 lbs, there would have been a "significant improvement" in Plaintiff's health. (Tr. 728).

In re-evaluating Plaintiff's credibility, the ALJ appears to have reviewed Plaintiff's testimony at the initial hearing held March 28, 2001. At that hearing, Plaintiff testified she had the need to use the bathroom at least three or four times every hour. (Tr. 411). She stated she had been to the emergency room three or four times because her right arm turns blue. (Tr. 412). She also stated she never used her right arm without

supporting it with her left and that it was constantly bothering her. Id. Plaintiff testified

to daily headaches, problems sleeping, and shortness of breath. (Tr. 415). Additionally,

Plaintiff spoke of her need to take a nap during the day (Tr. 417), her need for help

cleaning and cooking (Tr. 418), her inability to wash her own clothes (Tr. 423), and her

inability to lift a gallon of milk without discomfort (Tr. 424). Plaintiff's testimony at the

August 1, 2005 remand hearing was brief. Plaintiff was asked about her current weight.

She stated her weight was 258 lbs and she had lost about 17 lbs since her knee

surgery. She was also asked the date of her knee surgery and what her weight was

back in 2001. (Tr. 733). At the remand hearing, there was no testimony elicited from

Plaintiff regarding her pain or physical limitations.

## C.   Summary of the ALJ's Decision

A claimant is entitled to disability benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20

C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful

activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not

have any impairment or combination of impairments which significantly limits her

physical or mental ability to do basic work activities, then she does not have a severe

impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 2294 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through March 31, 1998. (Tr.454). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's final decision. Id. At step two, the ALJ determined Plaintiff had the following 'severe' impairments within the meaning of the Regulations: obesity and a history of right knee meniscus tear with surgical repair in 2004. (Tr. 438). The ALJ determined that none of Plaintiff's impairments, either singly or in combination, were 'severe' enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 439). However, Plaintiff's impairments were found to "have more than a minimal effect on [her] ability to perform basic work-related activities, ie., sitting, walking, standing, lifting and carrying." (Tr. 438). The ALJ found Plaintiff retained the residual functional capacity for:

> sedentary work in that she is able to sit for up to 6 hours in an
> 8-hour workday, and stand and walk a total of up to 2 hours.

> She has the ability frequently to lift and carry objects weighing
> up to 10 pounds.  She has limitations in her ability to push and
> pull using the upper extremities. She is able to climb, balance,
> kneel, crouch, crawl or stoop occasionally.  She is limited to
> occasional reaching with the right upper extremity.  She has no
> visual, communicative or environmental limitations.

(Tr. 447).

In making his RFC determination, the ALJ gave substantial weight to the opinion of consultative examiner, Dr. Lazo, because he found it consistent with the overall evidence in the record.  (Tr. 442).  The ALJ found the opinion of Plaintiff's treating physician, Dr. Papa-Patanguan, was entitled to little weight because it was unsupported by objective findings and Dr. Papa-Patanguan only saw Plaintiff for her hypertension, bronchitis, and joint pain complaints.  Id.  The ALJ also gave substantial weight to the opinion of Dr. Stephen Gyland, the Office of Hearing and Appeals medical expert.  Dr. Gyland opined Plaintiff's main problem was obesity and Plaintiff "would have experienced significant improvement if she had been compliant with prescribed treatment and lost 50-100 lbs." (Tr. 445).  Additionally, the ALJ found Plaintiff's allegations of limitations due to constant pain in her back, pain in her legs and arms, headaches, and shortness of breadth were not fully credible because the clinical examinations and diagnostic studies did not support them.  (Tr. 446).

At step four, the ALJ utilized the testimony of an impartial vocational expert ("VE") to determine whether Plaintiff could perform any of her past relevant work through her date last insured.  (Tr. 449).  The VE testified that consistent with the ALJ's RFC finding, Plaintiff would not be able to perform her past relevant work.  Id.  The VE further testified that a hypothetical individual with Plaintiff's specific work restrictions

would be capable of making a vocational adjustment and would be able to perform other work that exists in significant numbers in the national economy. (Tr. 450). Accordingly, the ALJ found Plaintiff was not under a "disability" within the meaning of the Social Security Act at any time through the date of his second decision. Id. Finally, the ALJ concluded there was strong evidence Plaintiff had failed to follow the prescribed medical treatment. (Tr. 453). However, the ALJ reasoned that because he found Plaintiff was not disabled, he did not need to determine whether Plaintiff was in fact non-compliant with the prescribed treatment and whether Plaintiff's compliance with the treatment would have restored her to substantial gainful activity. (Tr. 454).

## III.  STANDARDS OF LAW

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420,1422 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401, 91 S.Ct. at 1427).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.  ANALYSIS

Plaintiff argues several issues on appeal.  First, Plaintiff argues the Commissioner's failure to follow the Court's remand instructions unduly harmed and prejudiced Plaintiff.  (Doc. 13, p. 11).  Plaintiff contends the ALJ's decision to change the issues under consideration on remand, foreclosed Plaintiff's opportunity for a full and fair adjudication of her claim.  Id.  Second, Plaintiff argues even if the ALJ was authorized to consider issues other than those specifically raised in the Court's remand instructions, Plaintiff's claim should be remanded for a complete de novo hearing regarding her eligibility for disability benefits.  In particular, Plaintiff argues pursuant to the applicable Eleventh Circuit case law, the ALJ erred in re-evaluating Plaintiff's testimony and the opinion of Plaintiff's treating physician.  (Doc. 13, p. 16).  Plaintiff requests that this Court reverse the decision of the ALJ dated April 13, 2006 and remand her claim with instructions to the ALJ to adopt the findings set forth in his May

20, 2002 decision. Plaintiff asks that the ALJ be required to follow this Court's remand instructions as detailed in Russ v. Barnhart, 363 F. Supp.2d 1345 (M.D. Fla. 2005). In the alternative, Plaintiff requests that the ALJ's April 2006 decision be reversed and remanded for a de novo hearing: 1) to address the findings and opinions of Dr. Papa-Patanguan; 2) to properly assess Plaintiff's testimony and credibility; and 3) if applicable, to address whether Plaintiff failed to follow prescribed treatment.

A.    **Whether the ALJ committed reversible error by failing to follow the remand instructions of the district court**

When specific instructions have been provided in a remand order, whether that remand order is issued by the Appeals Council or the federal court, the ALJ must do as it instructs. See Warren-Ward v. Astrue, No. 1:07-cv-811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008). In addition, the regulations also allow the ALJ to consider issues not specifically contemplated in the remand order and to take action accordingly. See 20 C.F.R. § 404.977(b); See also 20 C.F.R. §§ 404.983, 416.1483. Upon remand, an ALJ is not bound by his or her earlier decision. See Miller v. Barnhart, 175 Fed. Appx. 952, 955 (10th Cir. 2006). He or she is encouraged to review "the record on remand, check[] initial findings of fact and mak[e] corrections, if appropriate." Id. at 955-56 (citing Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987)). However, an ALJ commits legal error by not following the mandate of the court. Bolen v. Astrue, No. CA 07-0516-C, 2008 WL 694712, at *3 (S.D. Ala. Mar. 12, 2008) (citing Thompson v. Barnhart, No. Civ. A. 05-395, 2006 WL 709795, at *11-12 (E.D. Pa. Mar. 15, 2006)). See also Tauber, 438 F. Supp. 2d at 1366 (holding error was committed because the

ALJ failed to consider "sit/stand" option required by the Appeals Council's remand order).

In May 2002, the ALJ found Plaintiff was disabled as of the onset date of April 29, 1997. However, the ALJ determined Plaintiff's claim was due to be denied because Plaintiff failed to follow prescribed treatment, and such failure was unjustifiable. (Tr. 42). Plaintiff challenged the ALJ's findings by filing a complaint in this Court and on May 12, 2005, the case was remanded to the Commissioner with the following specific instructions:

> 1) reconsider whether Plaintiff refused to follow prescribed treatment remaining cognizant of the fact lack of success in losing weight is not equivalent to noncompliance; 2) re-evaluate, if appropriate in light of the resolution of instruction number 1, whether Claimant's ability to work would have been restored had treatment not been refused; and 3) conduct any further proceedings deemed necessary.

Russ v. Barnhart, 363 F. Supp. 2d 1345, 1349 (M.D. Fla. 2005).

Plaintiff argues instead of following the remand instructions in his April 2006 decision, the ALJ simply changed his findings to justify his denial of Plaintiff's benefits. (Doc. 13, p. 2). Plaintiff takes issue with the fact that the ALJ's shift in position was, for the most part, based on the same evidence he reviewed in 2002. Nevertheless, in 2002, the ALJ found Plaintiff was unable to perform any work, even at a sedentary level, and in 2006, the ALJ found Plaintiff was able to perform at a sedentary level. Id. Plaintiff argues the ALJ failed to give sufficient explanation for the change in his findings. Id. Further, Plaintiff contends she reasonably believed the only issue to be considered at the remand hearing was whether or not she had failed to follow

prescribed treatment. As a result she argues, no evidence regarding other issues was submitted by Plaintiff on remand. Id.

The Commissioner argues the regulations at 20 C.F.R. §§ 404.983, 416.1483 allow any issues relating to a claim, whether or not those issues were raised in prior administrative proceedings, to be considered upon remand. (Doc. 14, p. 5). Furthermore, the Commissioner contends this Court's remand order also instructed the ALJ to "conduct any further proceedings deemed necessary" and thus, the ALJ's actions in reevaluating Plaintiff's testimony and the weight to be placed on Plaintiff's treating physician's opinion, were permissible and not inconsistent with the remand order. Id. The Commissioner argues Plaintiff was on notice that issues other than Plaintiff's alleged failure to follow prescribed treatment might be considered because, among other things, the remand order stated the ALJ was to "conduct any further proceedings deemed necessary." Id. at 7-8. The Commissioner suggests the ALJ may have committed an error in judgment in the way he conducted the hearing, but he did not commit an error of law. Id. at 8.

The Court finds the ALJ committed legal error because he was specifically directed to reconsider whether Plaintiff refused to follow treatment for her obesity and he failed to do so. However, the Court also finds the ALJ's decision to revisit his findings regarding the credibility of Plaintiff's testimony and the weight to be given to the opinion of Plaintiff's treating physician was not inconsistent with the Court's remand order. Therefore, the ALJ's failure to reconsider whether Plaintiff was non-compliant with her prescribed treatment will only be considered reversible error if the Court finds

the ALJ's new findings regarding Plaintiff's treating physician and Plaintiff's credibility are not supported by substantial evidence.

In the May 2002 decision, the ALJ determined "[t]he claimant was disabled as of the alleged onset date of April 29, 1997. However, . . . within 12 months of onset, failure to follow prescribed treatment had occurred and it [was] not justifiable." (Tr. 42, Finding 13). This Court found the ALJ's basis for denying Plaintiff benefits was not supported by substantial evidence. Russ, 363 F. Supp. 2d 1345, 1348 (M.D. Fla. 2005). The ALJ also found Plaintiff's ability to work at a sedentary level would have been restored if she had "followed said prescribed treatment at the time of the alleged onset date." (Tr. 42, Finding 12). The ALJ based his finding on the treating physicians's opinion that Plaintiff's condition "may have improved" had the treatment been undertaken when first prescribed. (Tr. 380). This Court, quoting Seals v. Barnhart, 308 F. Supp. 2d 1241, 1252 (N.D. Ala. 2004), noted "[i]mprovement does not equal an ability to work" and found the ALJ lacked a sufficient basis for deciding Plaintiff's compliance with treatment would have restored her ability to work. Russ, 363 F. Supp. 2d at 1348.

The regulations provide "in order to receive benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 CFR 404.1530(a). Therefore, a person who is otherwise found incapable of substantial gainful activity, but who fails without justifiable reason to follow the prescribed treatment, will not be found "disabled" and eligible for benefits under the regulations. SSR 82-59, 1982 WL 31384, at *1 (S.S.A. Nov. 30, 1981). A determination of failure to follow prescribed treatment can only be made where the following conditions exist: (1)

-14-

evidence shows Plaintiff cannot engage in substantial gainful activity; (2) the impairment has lasted or is expected to last twelve continuous months from onset of disability or is expected to result in death; (3) treatment which is clearly expected to restore capacity to engage in any substantial gainful activity ("SGA") has been prescribed by a treating source; and (4) the evidence shows there has been a refusal to follow prescribed treatment.  Bondarenko v. Astrue, 2008 WL 899220, at * 3 (M.D. Fla. 2008)(citing SSR 82-59, 1982 WL 31384, at *1 (S.S.A. Nov. 30, 1981)).  As such, an inquiry into whether or not a plaintiff refused prescribed treatment is moot unless the plaintiff is first found unable to engage in substantial gainful activity.

In the April 2006 decision, the ALJ stated Plaintiff had failed to follow prescribed medical treatment because she failed to lose weight after being given instructions on how to do so.  (Tr. 453).  However, unlike the May 2002 decision in which the ALJ found Plaintiff was unable to engage in substantial gainful activity, in the 2006 decision, the ALJ found Plaintiff had the residual functional capacity to perform a significant range of sedentary work and was therefore, not disabled.  (Tr. 455).  In effect, the ALJ's "not disabled" finding aborts the entire process of determining whether he undertook a proper reconsideration of Plaintiff's alleged failure to follow the prescribed treatment.  As previously outlined, in order to make a proper determination of failure to follow treatment, it must first be shown Plaintiff is "disabled" or unable to engage in substantial gainful activity.  In the 2006 decision, although the ALJ stated there was strong evidence Plaintiff failed to follow prescribed treatment, the ALJ did not complete the process of determining whether Plaintiff had failed to follow prescribed treatment

because he no longer found Plaintiff disabled.  In this regard, the ALJ failed to follow the first two remand instructions and committed an error of law.  See <u>Tauber</u>, 438 F. Supp. 2d at 1366 (N.D. Ga. 2006).

Turning to the third remand instruction, the ALJ was instructed to "conduct any further proceedings deemed necessary."  <u>Russ</u>, 363 F. Supp. 2d at 1349 (M.D. Fla. 2005).  The ALJ deemed it necessary to review his findings regarding the proper weight to be placed on the opinion of Plaintiff's treating physician and the credibility of Plaintiff's testimony.  In doing so, the ALJ did as the third remand instruction ordered.  Therefore, the Court's decision to remand Plaintiff's claim turns on whether the ALJ conducted a proper reevaluation of Plaintiff's treating physician's opinion and of Plaintiff's testimony. The Court will now address each of these issues.

**B.    Whether the ALJ's reevaluation of Dr. Papa-Patanguan's opinion is supported by substantial evidence**

The ALJ is required to give controlling weight to the opinion of a treating physician because a treating physician is one who is able to provide a detailed longitudinal picture of the claimant's impairment(s). 20 C.F.R. § 404.1527(d)(2).   A treating physician's opinion must be given "substantial or considerable weight unless 'good cause' is shown to the contrary."  <u>Wright v. Barnhart</u>, 153 Fed. Appx. 678, 684 (11th Cir. 2005)(citing <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997)).  The Eleventh Circuit has found there is "good cause" to place less weight on the opinion of a treating physician where: (1) the opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.  <u>Id.</u>  Where an ALJ discounts or rejects a treating

physician's opinion, he/she is required to articulate his/her reasons for doing so.  Phillips

v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).  An ALJ commits reversible error if

he/she fails to articulate reasons for discounting a treating physician's opinion.  See

Lewis, 125 F.3d at 1440 (11th Cir. 1986).  Where an ALJ does not give a treating

source's opinion controlling weight, the ALJ must still consider the following factors in

determining the weight to give that opinion: the length, nature and extent of the

treatment relationship, the frequency of examination, whether the opinion is supported

by objective findings, whether the opinion is consistent with the record as a whole, and

the specialization of the doctor.  See 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(6)(2008).

The ALJ commits legal error when he fails to consider and discuss the § 404.1527(d)

factors before discrediting a treating physician's opinion.  SSR 96-5p; See Tauber, 438

F. Supp. 2d at 1377; See also Newton v. Apfel, 209 F. 3d 448, 456 (5th Cir. 2000)

(holding the ALJ is required to consider each of the § 404.1527(d) factors before

discrediting treating physician's opinion).

     In the instant case, the ALJ determined the opinion of Plaintiff's treating physician

was entitled to limited weight because it was unsupported by objective findings.  (Tr.

442).  The ALJ also noted while Dr. Papa-Patanguan treated Plaintiff from November

2000 to February 2001, she only saw Plaintiff for hypertension, bronchitis and joint pain

complaints.  (Tr. 441).  It seems the ALJ reasoned there was good cause to place

limited weight on Dr. Papa-Patanguan's opinion because the doctor did not see Plaintiff

specifically for her severe impairment, ie. morbid obesity.

Plaintiff argues the ALJ did not consider the length, nature or extent of the treatment relationship, or the frequency of examination as required by the regulations. (Doc. 13, p. 18). Plaintiff states Dr. Papa-Patanguan began treating her in November 2000 and provided treatment to her on at least 13 occasions. Id. Plaintiff argues Plaintiff's "ongoing treatment relationship" with Dr. Papa-Patanguan is precisely the kind of relationship contemplated by the regulations. Id. She contends such a relationship should provide "a detailed, longitudinal picture of [Plaintiff's] medical impairment(s)" that "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." Id. See 20 C.F.R. § 404.1527(d)(2). Therefore, Plaintiff argues it was error for the ALJ to discount the treating physician's opinion without first evaluating it in light of the factors outlined in 20 C.F.R. § 404.1527(d).

The Commissioner argues the ALJ articulated several reasons for his decision. (Doc. 14, p. 13). The Commissioner contends substantial evidence supports the ALJ's decision to discount Dr. Papa-Patanguan's opinion. Id. at 15. Specifically, the Commissioner points to the fact that the ALJ found the limitations noted by Dr. Papa-Patanguan were not supported by her own objective findings. Id. at 12-14. Additionally, the Commissioner argues other evidence, such as Dr. Lazo's opinion and the testimony of medical expert Dr. Gyland, supports the ALJ's decision to give Dr. Papa-Patanguan's opinion limited weight. Id. at 14.

The Court finds the ALJ erred in his re-evaluation of Dr. Papa-Patanguan's opinion and failed to articulate sufficient reasons for discounting the opinion of Plaintiff's

treating physician.  The ALJ gave Dr. Papa-Papatanguan's opinion little weight because

he reasoned it was "not supported by objective findings."  (Tr. 442).  On the other hand,

the ALJ gave substantial weight to Dr. Lazo's opinion because it was an "independent,

objective medical examination, . . . based upon an in-person examination of the

claimant."  Id.  The Court finds the ALJ did not provide sufficient rationale for why Dr.

Lazo's opinion, which was based on a single in-person examination performed on

October 17, 2001, was entitled to greater weight than that of Plaintiff's treating physician

who saw Plaintiff more than 20 times over the course of two years.  (Tr. 352-3578, 577-

618).

        The Court acknowledges that Dr. Papa-Patanguan's medical source statement

does not point to medical or clinical findings and indicates that the limitations reflected

therein were based on Plaintiff's testimony to the doctor.  However, based on the

doctor's ongoing treatment relationship with Plaintiff, the Court finds the answers can

reasonably be accepted as credible and consistent with Dr. Papa-Patanguan's own

knowledge of Plaintiff's health problems.  Considering the emphasis the regulations

place on a treating physician's ability to provide a longitudinal picture of a plaintiff's

impairments, beyond the results obtained from objective medical findings alone, the

Court finds the ALJ's assertion that Dr. Papa-Patanguan "primarily saw the claimant for

her hypertension, bronchitis and joint pain complaints" insufficient reason to discredit

the doctor's opinion.  (Tr. 379 - 380).  Dr. Papa-Patanguan's treatment notes and her

answers to the OHA/ALJ interrogatories regarding Plaintiff's obesity indicated she was

not only familiar with Plaintiff's obesity, but also concerned about its effect on the other

ailments she was treating.  As such, the Court finds having treated Plaintiff continuously over the course of 2 years, Dr. Papa-Patanguan was certainly in a position to provide insight into Plaintiff's obesity.  While Dr. Papa-Patanguan did not provide objective medical findings specific to Plaintiff's obesity, her opinion was based on a unique perspective that could only be acquired through the "ongoing treatment relationship" she shared with Plaintiff.  The Court further finds the ALJ committed legal error by failing to address most of the factors listed in 20 C.F.R. § 404.1527(d).  It appears the ALJ considered the nature of Dr. Papa-Patanguan's relationship with Plaintiff and whether the doctor's opinion was supported by objective findings. (Tr. 442).  However, the ALJ makes no mention of the remaining regulatory factors.  As such, the ALJ's decision was deficient in its dismissal of Dr. Papa-Patanguan's opinion.  See SSR 96-5p.

The Commissioner argues the ALJ was correct in giving substantial weight to the opinion of Dr. Gyland, a non-examining physician whose testimony was obtained after the remand.  (Doc.14, p. 15).  The regulations allow the opinion of non-examining physicians to override that of a treating physician in certain circumstances.  See 20 C.F.R. § 404.1527(f)(2)(iii).  However, before a non-examining source's opinion may be given controlling weight, the treating physician's opinion must be properly discounted. Mills v. Astrue, 2007 WL 979925, at *6 (11th Cir. 2007).  Here, the Court finds the treating physician's opinion was not properly discounted.  The ALJ has not shown good cause for discounting the treating physician's opinion by clearly articulating his reasons and supporting them with the evidence.  As such, the Court need not consider whether

it was appropriate, in this circumstance, for the non-examining physician's opinion to override that of the treating physician.

### C. Whether the ALJ's reevaluation of Plaintiff's pain testimony is supported by substantial evidence

Pain is a non-exertional impairment. <u>Foote</u>, 67 F.3d at 1559. The ALJ must consider *all* of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528 (emphasis added). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

<u>Foote</u>, 67 F.3d at 1560 (quoting <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. <u>Jones v. Dep't of Health & Human Servs.</u>, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating reasons must be based on substantial evidence); <u>see</u> <u>also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (holding precedent

in the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony").  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

In the ALJ's second decision, he found Plaintiff's alleged limitations were not entirely credible because they were unsupported by clinical examinations and diagnostic studies.  (Tr. 446).  The ALJ acknowledged Plaintiff's primary health impairment was obesity.  Id.  However, with regard to each of the other health concerns Plaintiff had been treated for over the years, the ALJ found there was no evidence of continuing impairment that could give rise to Plaintiff's alleged pain and limitations.  Id.  In reevaluating Plaintiff's credibility, the ALJ relied on the fact that despite Plaintiff's failure to lose weight, Dr. Lazo gave her a residual functioning capacity compatible with sedentary work and Dr. Gyland opined Plaintiff was capable of light work.  Id.

Plaintiff argues the ALJ's reevaluation of Plaintiff's testimony is not supported by substantial evidence.  (Doc. 13, p. 22).  First, Plaintiff takes issue with the fact that in the first decision, the ALJ found Plaintiff's testimony "completely credible" and ultimately found her disabled, yet in the second decision, the ALJ found the same testimony "not entirely credible" and still used it to support his new finding that Plaintiff was capable of sedentary work.  (Doc. 13, p. 23).  Second, Plaintiff argues the ALJ should have obtained updated testimony about the severity of Plaintiff's limitations before changing

-22-

his finding about her credibility because the remand hearing was held almost 5 years after Plaintiff's initial testimony was taken. Id. In this regard, Plaintiff contends the ALJ did not provide notice to Plaintiff that her credibility would be an issue under consideration at the remand hearing and as a result, no new testimony regarding her pain and limitations was elicited from Plaintiff. (Doc. 13, p. 19). Third, Plaintiff argues the ALJ should not be allowed to "pick and choose" a single statement from Plaintiff's testimony to support his change in position without addressing the many other statements Plaintiff made regarding her limitations. (Doc. 13, p. 23).

The Commissioner argues the ALJ provided substantial evidence to support his finding. The Commissioner contends Plaintiff complained of back pain, pain in her arms and legs, headaches and shortness of breath, yet there was no objective evidence to support the allegations and no evidence of impairments that could reasonably be expected to give rise to the symptoms alleged. (Doc. 14, p. 10). Specifically, the Commissioner contends the ALJ was correct in his re-evaluation because despite Plaintiff's complaints of back pain, there was no evidence she received treatment for a back impairment. (Doc. 14, p. 11). Similarly, despite Plaintiff's history of right knee pain, evidence showed her knee was stable. Id. Finally, evidence showed Plaintiff's history of hypertension and diabetes were controlled with medication. Id.

First, the Court finds the ALJ misapplied the Eleventh Circuit's three-part "pain standard." As previously stated,

> the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical

> condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

<u>Foote</u>, 67 F.3d at 1560.  Plaintiff complained of back pain, pain in the arms and legs, headaches and shortness of breath.  To satisfy the first prong of the pain standard, it appears the ALJ looked for evidence of an underlying medical condition specific to each complaint.  For example, the ALJ found no objective evidence of a back impairment and therefore, he discredited Plaintiff's allegations of back pain.  (Tr. 446).  The Court finds the ALJ erred in this approach.  The Court finds Plaintiff met the requirement of the pain standard's first prong because there was sufficient evidence of an underlying medical condition, namely "obesity."  Obesity is considered a "complex, chronic disease characterized by excessive accumulation of body fat."  <u>See</u> SSR 00-3P: *Evaluation of Obesity,* 2000 WL 33952015.  Plaintiff's treatment records indicated she was 5' 8" with weight that was consistently above 258 pounds and the ALJ found sufficient evidence of Plaintiff's obesity to deem it a "severe impairment." (Tr. 454).  Therefore, the Court finds the ALJ erred by not assessing whether Plaintiff's obesity was of such severity that it could reasonably be expected to give rise to the alleged back pain, pain in her arms and legs, headaches and shortness of breath.

Second, the ALJ failed to properly evaluate Plaintiff's statements about her pain and symptoms.  <u>See</u> 20 C.F.R. § 404.1529(a).  The ALJ failed to consider Plaintiff's statements in light of the factors outlined in 20 C.F.R. § 404.1529(c)(3)(i) - (vii) and failed to articulate adequate reasons for discrediting Plaintiff's testimony.  <u>See</u> <u>Jones</u>, 941 F.2d at 1532.  Social Security Ruling 96-7p explains allegations of a claimant's pain and limitations cannot be "disregarded solely because they are not substantiated by

objective medical evidence." See SSR 96-7p: *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. 1996 WL 374186. The regulations require that the ALJ consider several factors including how the alleged symptoms and pain affect the claimant's daily activities, the effects and side effects of any medication used, and other measures used to alleviate claimant's pain or symptoms. In the 2002 decision, the ALJ found Plaintiff's subjective pain testimony was supported by objective medical evidence of a condition that could reasonably be expected to produce Plaintiff's alleged symptoms. (Tr. 31). He also found Plaintiff's alleged symptoms were consistent with her activities of daily living. (Tr. 32). In contrast, in the 2006 decision, the ALJ appears to have based his entire credibility finding on the fact that there was no objective medical evidence that proved Plaintiff was experiencing the specific symptoms she alleged and Plaintiff was able to sit up and do crossword puzzles. (Tr. 447). In her initial testimony, among other things, Plaintiff indicated she had to use the restroom three to four times an hour, she needed to lie down and nap during the day, she needed help with daily chores, she had difficulty washing clothes, and she would have difficulty even lifting a gallon of milk. (Tr. 411, 417, 418, 423, 424). The Court finds the ALJ did not provide sufficient explanation for the change in his credibility finding. In the 2006 decision, the ALJ seems to have ignored Plaintiff's additional statements about how her life has been affected by her impairment. The ALJ does not provide an evaluation of Plaintiff's activities of daily living nor does the ALJ discuss Plaintiff's testimony about medication and other methods used to alleviate her symptoms. The Court finds the ALJ failed to explicitly articulate his

reasons for discrediting Plaintiff's pain testimony. Additionally, the Court finds the ALJ's re-evaluation of Plaintiff's testimony was not supported by substantial evidence.

## V. CONCLUSION

The Court finds while the ALJ was free to review his findings regarding Dr. Papa-Patanguan's opinion and the credibility of Plaintiff's testimony, he failed to support his new findings with substantial evidence in the record. Accordingly, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner shall conduct a de novo hearing and properly address 1) Dr. Papa-Patanguan's opinion; 2) Plaintiff's testimony and credibility; 3) if applicable, properly determine whether Plaintiff failed to follow prescribed treatment; and 4) conduct any other proceedings deemed necessary.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this ___20th___ day of March, 2009.

*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record